**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CONSTANCE BOWER,    :
   Plaintiff,     :  **CIVIL ACTION NO. 1:03-CV-0792**
           :
v.           :
           :  **(Chief Judge Kane)**
DENNIS STEWART, PATRICK  :
CORKLE, DOMINICK DEROSE, and :
DAUPHIN COUNTY,    :
   Defendants.    :

**<u>MEMORANDUM</u>**

Before the Court is Defendants' motion for summary judgment.  (Doc. No. 40.)  The motion has been fully briefed and is ripe for disposition.

**I.  BACKGROUND**[1]

From July 6, 2004, Plaintiff Constance Bower was employed as a Lieutenant at the Dauphin County Prison.  (Doc. No. 42, ¶ 2.)  Among her duties at the prison was the administration of an internal hearing mechanism, known as "Courtline," that reviewed allegations of alleged misconduct.  (Doc. No. 42, ¶¶ 64-69.)  In the course of her investigation, Plaintiff uncovered evidence of an October 19, 2002, unlawful beating of an inmate.  (<u>Id.</u>)  At the Courtline hearing, Plaintiff stated that the inmate was wrongfully beaten by the guards.  (Doc. No. 53, ¶¶ 68.)  She was then instructed by Defendant Stewart not to investigate further.  (<u>Id.</u>)  Plaintiff avers that "after that incident, the relationship between the plaintiff and the defendants deteriorated."  (Doc. No. 52, at 2; Doc. No. 53, ¶ 70.)

---

[1] Pursuant to Local Rule 56.1, Defendants filed a statement of material facts with their motion for summary judgment (Doc. No. 42), and Plaintiff has filed a counter-statement to Defendants' statement of material facts (Doc. No. 53).  In this section, the Court has presented and viewed the evidence in a light favorable to Plaintiff, the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

While Plaintiff was taking approved vacation time to travel to Florida, she missed a mandatory staff meeting on March 5, 2003, without written permission to be excused.  (Doc. No. 53, ¶ 73.)  As a result, Plaintiff incurred five points on the prison's attendance discipline program.  (Doc. No. 42, ¶¶ 72-73.)  She was also docked another two points and given a "major violation" on March 11, 2003, for arriving one minute late for work and without alerting her supervisor, Defendant Corkle.[2]  (Doc. No. 53, ¶ 75.)  Plaintiff contends that these disciplinary acts were "shallow, frivolous and designed intentionally to terminate her" in retaliation for her stance in the Courtline investigation.  (Id.)  On March 24, 2003, Major Stewart conducted a fact-finding hearing, with information presented by Captain Corkle, regarding the disciplinary incidents and recommended a seven-day suspension.  Warden DeRose approved the suspension, but Plaintiff never served it.  (Doc. No. 42, ¶¶ 75-77.)

On May 12, 2003, Plaintiff filed a complaint in this Court alleging First Amendment retaliation.  (Doc. No. 1.)  After she filed the complaint, Defendant Dauphin County instituted a new procedure for dealing with disciplinary matters among its higher ranking officers.  Pursuant to this new procedure, Dauphin County established an independent panel to review allegations and make recommendations of the proper course of discipline to the Prison Board.  Defendants argue that the independent panel was established to prevent the possibility or perception of retaliatory or discriminatory discipline.

Plaintiff was subject to further discipline under the new procedure, based upon the

---

[2] Plaintiff alleges that Defendant Corkle was on the telephone and concerned about his hospitalized father when she arrived late to work and that she then forgot about the issue until she was leaving for the day, at which time it was too late to inform Defendant Corkle, who had already left.

following alleged acts: a June 10, 2003, allegation of inappropriate sexual touching of another officer; failure to attend a mandatory Oleoresin Capsicum Aerosol Training session; taking excessive smoking breaks based on a three-day review of her activities; and providing a letter of reference through the prison system without the Warden's permission.  Plaintiff claims that Defendants' proffered reasons for discipline are merely pretext for retaliation.  She claims that she did not engage in any sexual touching, that she rescheduled the training session and did eventually take it, that she was being singled out in her use of smoke breaks, and that she merely provided background information – not a letter of reference – at the prospective employer's request.  On October 16, 2003, the independent panel reviewed the disciplinary charges and recommended the Prison Board impose a two-week suspension.  (Doc. No. 42, ¶¶ 30-32.)

On May 26, 2004, the Prison Board reviewed an additional six incidents involving Plaintiff's behavior: (1) a February 19, 2004, incident of clocking in and out on another employee's time card; (2) an April 4, 2004, failure to respond to a medical emergency, which occurred while Plaintiff was outside smoking; (3) an April 19, 2004, failure to protect official paperwork from its removal and copying by a subordinate; (4) a May 12, 2004, failure to respond to another medical emergency; (5) a May 13, 2004, failure to take proper action upon learning about an illegal substance being mailed to the prison; and (6) a May 17, 2004, failure to obey her prohibition from taking smoking breaks.  (Doc. No. 42, ¶ 41.)  Plaintiff contends that these charges are without merit and were made in retaliation of her filing the instant civil action. (Doc. No. 53, ¶ 153.)  Although Plaintiff now disputes each of the above charges,[3] Plaintiff did

_____

[3] Plaintiff claims that she used another officer's time card because her time card was missing and she acted per the instructions of her supervisor, Defendant Corkle.  Plaintiff claims that she did in fact respond to the April 4th medical emergency, citing the fact that she was only

3

not participate in the pre-discipline hearing, wherein the Prison board voted unanimously to terminate Plaintiff.  (Doc. No. 42, ¶¶ 47-48.)

Plaintiff alleges that Defendant DeRose influenced the panel's decisions by presenting false information at Plaintiff's hearings, some of which was allegedly provided to him by Defendant Stewart, and that Defendant Corkle submitted "inaccurate and distorted information" to the panel in an effort to secure Plaintiff's wrongful discipline.[4]  (Doc. No. 53, ¶¶ 29, 79, 104.)

On May 12, 2003, Plaintiff filed a complaint under 42 U.S.C. § 1983, alleging that the subsequent disciplinary acts, up to and including her termination, were retaliation for investigating and reporting the alleged prison beating.  (Doc. No. 1.)  On October 4, 2004, Plaintiff filed an amended complaint adding Dominick, DeRose, and Dauphin County as new defendants and asserting a new First Amendment claim.  (Doc. No. 23.)  In this second claim, Plaintiff alleges that all of the disciplinary actions taken against her after May 2003 were in retaliation for filing the instant civil action in violation of her First Amendment rights.  On June 29, 2005, Defendants moved for summary judgment.  (Doc. No. 40)

---

two minutes behind Defendant Stewart in arriving on the scene; Plaintiff allowed the copying of documents because she saw the subordinate speaking with Defendant Corkle immediately prior to his entry to make the copies and believed that he had given permission; she neglected to respond in a timely fashion to the May 12th emergency because her radio was malfunctioning, but she aided once she could make contact; she alerted the proper people who were on duty with reference to the mail issue; and she was smoking only when she was conducting job-specific duties outdoors, rather than going outside for that expressed purpose.  (Doc. No. 53, ¶ 41.)

[4] After Plaintiff was terminated, she was ineligible for unemployment compensation benefits because the Lancaster Unemployment Compensation Service Center had determined that she "had been discharged from employment for willful misconduct in violation of the employer's policies," as affirmed by the Unemployment Compensation Board of Review  (Doc. No. 42, ¶¶ 221, 225.)

4

## II.    STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  A factual dispute is material if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party.  Id. at 249.  The evidence presented must be viewed in the light most favorable to the nonmoving party.  Id.  "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other."  Id.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, the nonmoving party may not simply sit back and rest on the allegations in the complaint.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id.  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322.

5

III.     **DISCUSSION**

Defendants raise three main arguments in their motion for summary judgment.  First, they contend that the Plaintiff has failed to establish a cognizable First Amendment retaliation claim.  Second, Defendants assert that they are entitled to qualified immunity.  Third, Defendants claim that Plaintiff has not established that Defendants were personally involved in the retaliation against Plaintiff.  The Court will address each in turn.

A.       **First Amendment Retaliation Claims**

To state a prima facie claim for First Amendment retaliation, a plaintiff has the burden to show: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."  Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).  The first element is an issue of law, whereas the second element is an issue of fact.  Curinga v. City of Clairton, 357 F.3d 305, 310 (3d Cir. 2004).

Once a plaintiff has stated her prima facie case, the burden shifts to the defendant to show "that the same adverse action would have taken place in the absence of the protected conduct."  Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005).  Additionally, the Third Circuit has indicated that even if a plaintiff meets her burden in showing that the protected activity was a "substantial factor" in taking the adverse action against her, if a defendant can show that "that some other factor unrelated to the protected activity was the but-for cause of the [adverse action]," the plaintiff cannot state a claim.  Id. at 127 n.11.  At summary judgment, however, the "defendant must present evidence of such quality that no reasonable juror could conclude that the protected activity was the but-for cause of the [adverse action]."  Id.

### 1.    The protected First Amendment activity

Plaintiff's amended complaint advances two independent bases for her First Amendment retaliation claim.  First, she alleges that she was retaliated against for making critical statements of her supervisors arising out of her findings in the Courtline investigation.  Second, she alleges that she was retaliated against for initiating a legal action in this Court.

### a.    Plaintiff's statements related to her Courtline investigation

While Defendants' motion for summary judgment was pending, the Supreme Court issued its opinion in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), which defined the scope of protected activity for public employees under the First Amendment.  After Garcetti, a public employee's statement receives First Amendment protection where: (1) the statement was made as a citizen; (2) it involved a matter of public concern; and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made.  Borough of Kutztown, 455 F.3d at 241-42 (citing Garcetti, 126 S. Ct. at 1958).

In addressing the first element, the Supreme Court held that when public employees speak "pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 126 S. Ct. at 1960.  Although the inquiry for whether a public employee is acting within her official duties is "a practical one," id. at 1961-62, it is undisputed in this case that Plaintiff was acting within her official duties to conduct the Courtline investigation.  (Unsworn Decl. of Bower, Doc. No. 54-4, ¶¶ 3-11.)  Therefore, because Plaintiff did not speak as a private citizen when she made the critical statements about her findings in the

Courtline investigation, her statements are not protected activity under the First Amendment.

> **b.      Plaintiff's filing of a complaint**

Although Plaintiff's statements concerning her Courtline investigation are not protected under the First Amendment, Plaintiff also alleges that she was retaliated against for filing a lawsuit in this Court.  Within this circuit, it is clear that "any lawsuit brought by an employee against a public employer qualifies as a protected 'petition' under the First Amendment so long as it is not 'sham litigation.'"  City of Scranton, 411 F.3d at 126 (citing San Filippo v. Bongiovanni, 30 F.3d 424, 443 (3d Cir. 1994)).  In this case, therefore, it is indisputable that when Plaintiff filed her initial complaint against Defendants, she was engaging in protected activity under the First Amendment.  The first element of her prima facie retaliation claim is therefore satisfied.

> **2.      Protected activity was a "substantial factor" in alleged retaliatory action**

To make out a prima facie case, Plaintiff must also allege that her filing of a lawsuit was a "substantial factor" in Defendants' retaliation against her.  To demonstrate that the protected activity was a "substantial factor," a plaintiff can offer circumstantial evidence such as: (1) temporal proximity between the act and response, Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000); (2) selective enforcement of rules against plaintiff, Marrero v. Camden City Bd. of Soc. Servs., 164 F. Supp. 2d 455, 470 (D.N.J. 2001); (3) defendant's behavior changed after the protected act, McCullough v. City of Atlantic City, 137 F. Supp. 2d 557, 568 (D.N.J. 2001); and (4) defendant's inconsistent reasons for taking adverse action against plaintiff, Waddell v. Small Tube Prods., Inc., 799 F.2d 69, 73 (3d Cir. 1986).  A plaintiff is not obligated to prove that the adverse action was particularly severe; rather, as the Third Circuit has

recently held, "[e]ven an act of retaliation as trivial as failing to hold a birthday party for a public employee, if intended to punish her for exercising her free speech rights, may be actionable if under the circumstances it would be sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights." O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006).

Taking all inferences in favor of the Plaintiff, it is not difficult for the Court to find that genuine issues of material fact exist in this case. Plaintiff alleges that she was subject to discipline shortly after the filing of her original complaint on May 12, 2003. For example, Plaintiff was subject to complaints and reports of "questionable actions" in June and July of 2003 (Doc. No. 42, ¶ 122) including complaints of: (1) sending a letter of recommendation on prison letterhead on June 10 (id. ¶¶ 127-30); (2) taking excessive lunch breaks on June 15 (id. ¶¶ 123-26); (3) taking extended smoke breaks in early July (id. ¶¶ 131-32); and, (4) failing to attend a mandatory training session on July 3 (id. ¶ 133). That these incidents followed so closely on the heels of Plaintiff's filing of her complaint on May 12, 2003, is sufficient evidence for a reasonable juror to conclude that her discipline measures were intended to punish her for exercising her First Amendment rights.

### 3. Independent justification for the adverse action

Once Plaintiff has stated a prima facie case, the burden shifts to the Defendants to show that the "adverse action would have taken place in the absence of the protected conduct." City of Scranton, 411 F.3d at 125. In this case, Defendants assert that Plaintiff's termination and disciplinary actions leading up to it were "based upon legitimate business reasons (violations of prison policies and procedures) unrelated to any litigation that she had filed." (Doc. No. 42,

¶ 117.)  To that end, Defendants argue vigorously that for each of the disciplinary measures, Plaintiff actually violated various prison policies.

Although Plaintiff contends that she did not violate such policies, she does not allege that she was not afforded due process, nor can she reasonably allege that the independence of the review panel was somehow compromised.

Nevertheless, Plaintiff does proffer evidence that Defendants enforced the rules more vigorously against her than other employees.  Furthermore, Plaintiff has suggested that Defendants enforced the rules more vigorously against her after she engaged in protected activity.  Most notably, Plaintiff states that she has "received over 3 times as many citations in one year as she did in her entire almost 20 year previous work history."  (Doc. No. 23, ¶ 27.) Also, as shown above, the temporal proximity of the disciplinary actions to the filing of Plaintiff's complaint suggests that Defendants' reasons for bringing such actions were illegitimate.  Thus, while Defendants are correct to argue that each individual disciplinary action may have been legitimate, a reasonable juror could conclude that as a whole, the but-for cause of Plaintiff's discipline was her filing of a complaint.

Taking all inferences in favor of the Plaintiff, the Court is unable to say that Plaintiff has not stated a prima facie case or that Defendants have met their burden at the summary judgment to show that the adverse action would have happened independent of Plaintiff's protected activity.  Therefore summary judgment on this ground will be denied.

### B.  Defendants' Qualified Immunity Defense

Defendants also argue that summary judgment should be granted because they are entitled to qualified immunity.  Qualified immunity is "an entitlement not to stand trial or face

the other burdens of litigation," which must be evaluated "at the earliest possible stage in litigation." Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (internal citations omitted).

Qualified immunity analysis requires two steps.  First, the Court must determine "whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right."  Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  As shown above, the Court concludes that Plaintiff has advanced sufficient evidence to show that Defendants retaliated against her in violation of the First Amendment.  Second, the Court must determine "whether the constitutional or statutory right allegedly violated by the defendant was 'clearly established.'"  Williams, 455 F.3d at 190.  This inquiry turns on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.

Defendants in this case do not argue that the right to be free from retaliation for engaging in protected First Amendment activity is not "clearly established."  See Thomas v. Independence Twp., 2006 U.S. App. LEXIS 23685 (3d Cir. Sept. 14, 2006).  Moreover, even if the individual officers were unaware of the scope of protected public-employee speech, it would be clear to a reasonable officer that retaliation for filing a lawsuit would violate the First Amendment. McGreevy v. Stroup, 413 F.3d 359, 366-67 (3d Cir. 2005).  Under the second step of the qualified-immunity analysis, therefore, the Court concludes that Plaintiff's constitutional rights were clearly established.

As a result, Defendants are not entitled to qualified immunity in this case.

**C.      Individual Participation Claims**

Defendants finally assert that they are not liable in their individual capacities because

they were not personally involved in the retaliation against Plaintiff.  The Third Circuit clearly

requires that "an individual government defendant in a civil rights action must have personal

involvement in the alleged wrongdoing."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)

(quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  To satisfy this

requirement, Plaintiff must show "either through allegations of personal direction or of actual

knowledge and acquiescence, or through proof of direct discrimination" that the Defendants had

personal involvement with the retaliation.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1478

(3d Cir. 1990) (internal citations and quotations omitted).

Defendants argue that Plaintiff has not satisfied the requirement because "[t]he record is

devoid of any evidence establishing that the individual Defendants in any way directed,

influenced and/or interfered with the independent panel's investigation of the pending

disciplinary matters; its factual findings; and/or its recommendation to the Prison Board."  (Doc.

No. 41, at 9.)  Defendants argument is, however, inapposite to Plaintiff's theory that the panel's

decision was predicated upon the claimed retaliatory disciplinary measures.  Whether

Defendants were personally involved in the panel's decision is immaterial if they singled out

Plaintiff for discipline before the panel.  The Court, therefore, will not grant Defendants' motion

for summary judgment on Plaintiff's claims against the individual Defendants.[5]

---

[5] Defendants also argue that summary judgment must be entered for Defendants Stewart, Corkle, and DeRose in their official capacities because Plaintiff's claims against them merge into those asserted against Dapuhin County.  In Plaintiff's brief in opposition to Defendants' motion for summary judgment, Plaintiff states: "Plaintiff instituted the action against the individual defendants in their personal capacities and not in their official capacities.  Likewise, Plaintiff brought the action against Dapuhin County in its official capacity."  (Doc. No. 52, at 11.)

**IV.      CONCLUSION**

For the foregoing reason, Defendants motion for summary judgment will be denied.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CONSTANCE BOWER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 1:03-CV-0792** |
| | : | |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **DENNIS STEWART, PATRICK** | : | |
| **CORKLE, DOMINICK DEROSE, and** | : | |
| **DAUPHIN COUNTY,** | : | |
| **Defendants.** | : | |

## ORDER

Therefore, for the reasons discussed above, **IT IS ORDERED THAT** Defendants'

motion for summary judgment (Doc. No. 40) is **DENIED**.


 S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania


Date:    October 26, 2006